1   Leonard M. Shulman – Bar No. 126349
    Melissa R. Davis – Bar No. 245521
2   **SHULMAN HODGES & BASTIAN LLP**
    26632 Towne Center Drive, Suite 300
3   Foothill Ranch, California 92610
    Telephone:    (949) 340-3400
4   Facsimile:    (949) 340-3000
    E-mail:       lshulman@shbllp.com
5                 mdavis@shbllp.com

6   Attorneys for John M. Wolfe,
    Chapter 7 Trustee
7

8                    **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

11  In re                                    Case No.  8:09-bk-18292-ES

12  **ALAN G. BEVIER** and **CATHERYN**      Chapter 7
    **BEVIER,**
13                                           **CHAPTER 7 TRUSTEE'S MOTION FOR**
    Debtors.                                 **ORDER:**
14
                                                 **(1) APPROVING THE SALE OF**
15                                                   **DEBTORS' TENANCY IN COMMON**
                                                     **INTEREST IN REAL PROPERTY**
16                                                   **SUBJECT TO ALL EXISTING LIENS**
                                                     **ON THE PROPERTY AND SUBJECT**
17                                                   **TO OVERBIDS;**

18                                               **(2) APPROVING OVERBID**
                                                     **PROCEDURES; AND**
19
                                                 **(3) GRANTING RELATED RELIEF;**
20
                                             **MEMORANDUM OF POINTS AND**
21                                           **AUTHORITIES AND DECLARATION OF**
                                             **JOHN M. WOLFE IN SUPPORT THEREOF**
22
                                             **[Real Property Located at:  131 Esplanade,**
23                                           **Aptos, California]**

24                                           Date:   September 2, 2010
                                             Time:   10:30 a.m.
25                                           Place:  Courtroom 5A
                                                     411 West Fourth Street
26                                                   Santa Ana, CA  92701

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

1

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................4

I.      BACKGROUND INFORMATION .............................................................................4

    A.      Case Commencement.........................................................................................4

    B.      The Property......................................................................................................5

    C.      The Offer and Terms of Sale ............................................................................6

    D.      Notice of Bidding Procedures ..........................................................................8

    E.      Approval of the Sale Motion Serves the Best Interests of the Estate and Its
    Creditors..........................................................................................................10

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................12

I.      COURT MAY AUTHORIZE THE SALE OF THE PROPERTY WHEN THERE
IS A GOOD FAITH PURCHASER ...........................................................................12

    A.      Sound Business Purpose .................................................................................12

    B.      The Sale Serves the Best Interests of the Estate and Creditors.......................13

    C.      Accurate and Reasonable Notice ....................................................................14

    D.      The Sale is Made in Good Faith .....................................................................14

II.     THE COURT HAS AUTHORITY TO APPROVE THE PROPOSED BIDDING
PROCEDURES...........................................................................................................15

    A.      The Overbid Procedures are Untainted by Self-Dealing .................................15

    B.      The Overbid Procedures Encourage Bidding and are Fair in Amount .............15

    C.      The Overbid Procedures are Fair, Reasonable and Serve the Best Interests
    of the Estate.....................................................................................................16

III.    THE COURT HAS AUTHORITY TO WAIVE THE FOURTEEN-DAY STAY
OF SALE ....................................................................................................................17

IV.     CONCLUSION............................................................................................................17

DECLARATION OF JOHN M. WOLFE ...........................................................................18

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) ........................................... 12, 13

*In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982) ............................................................ 15

*In re Crowthers McCall Pattner, Inc.*, 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) ................... 12

*In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) ........................................................ 12, 13

*In re Walter*, 83 B.R. 14 (Bankr. 9th Cir. 1988) .................................................................... 12, 13

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ................. 12, 14

## STATUTES

Bankruptcy Code Section 105(a) ............................................................................................... 15

Bankruptcy Code Section 363 ........................................................................................... 8, 12, 14

Bankruptcy Code Section 363(b)(1) ........................................................................................... 15

## RULES

Federal Rule of Bankruptcy Procedure 6004 .............................................................................. 17

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

3

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

<div align="center">

**INTRODUCTION**

</div>

John M. Wolfe ("Trustee"), the Chapter 7 trustee for the bankruptcy estate ("Estate") of Alan G. Bevier and Catheryn Bevier (collectively, "Debtors"), brings this Motion for Order Approving:  (1) the Sale of Debtors' Tenancy in Common Interest in Real Property Subject to All Existing Liens on the Property and Subject to Overbids; (2) Overbid Procedures; and (3) Granting Related Relief ("Sale Motion").

The Trustee has received an offer to purchase the Debtors' tenancy in common interest in the business property located at 131 Esplanade, Aptos, California ("Property") for $112,000, subject to overbids and subject to all existing liens on the property.  However, the estimated net proceeds may increase in the event the purchase price is increased by a successful overbid.  As of July 26, 2010, The Court's claims register for this case indicates that the total unsecured claims filed are approximately $70,000.  Through the sale, the Trustee is expected to generate proceeds of at least $112,000 which will provide a significant distribution to unsecured creditors after payment of administrative claims.

If the Sale Motion is not approved, the Trustee may lose this opportunity to sell the Estate's interest in the Property.  In such event, unsecured creditors would likely receive no distribution from this case as the Property is the only significant asset of the Estate.  As such, through this Sale Motion, the Trustee will preserve a benefit for creditors which will be lost if the Sale Motion is not granted.  In support of the Sale Motion, the Trustee respectfully represents as follows:

<div align="center">

**I.      BACKGROUND INFORMATION**

</div>

**A.      Case Commencement**

On August 11, 2009, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

4

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1    John M. Wolfe is the duly appointed, qualified and acting Chapter 7 trustee in the

2  Debtors' bankruptcy case.

3    The Debtors' Section 341(a) Meeting of Creditors was held and concluded on December

4  15, 2009.

5    The Debtors were granted a discharge on February 9, 2010.

6  **B.    The Property**

7    In their Amended Bankruptcy Schedule A, the Debtors list an ownership interest in the

8  Property.  The Trustee has learned that title to the Property is vested as follows:

9    Patrick E. Duggan, a married man as his sole and separate property, as to an
10    undivided 31.272% share; Richard L. Baiocchi, a married man as his sole and
     separate property, as to an undivided 29.8965% share; Alan G. Bevier, a married
11    man as his sole and separate property, as to an undivided 29.8965% share; and
     Joseph W. Sawyer, as to an undivided 8.935% share; as tenants in common
12

13  The Property is legally described as follows[1]:

14    PARCEL ONE:

15    ALL OF LOTS 16 AND 17, IN BLOCK 53, AS SHOWN UPON THAT CERTAIN MAP
      ENTITLED, "MAP OF SUBDIVISION NO. 5, APTOS BEACH COUNTRY CLUB
16    PROPERTIES, APTOS, SANTA CRUZ COUNTY, CALIFORNIA", FILED FOR RECORD
      JUNE 7, 1926 IN VOLUME 23 OF MAPS AT PAGE 25, SANTA CRUZ COUNTY RECORDS.

17    EXCEPTING THEREFROM ALL MINERAL RIGHTS AS RESERVED IN THE DEED FROM
18    SANTA CRUZ LAND TITLE COMPANY, A CORPORATION TO SANTA CRUZ COUNTY
      TITLE COMPANY, A CORPORATION, RECORDED FEBRUARY 9, 1953 IN BOOK 902,
19    PAGE 130, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

20    PARCEL TWO:

21    BEING LOTS 18 AND 19, IN BLOCK 53, AS THE SAME ARE SHOWN AND DESIGNATED
      ON THAT CERTAIN MAP ENTITLED, "SUBDIVISION NO. 5 APTOS BEACH COUNTRY
22    CLUB PROPERTIES, APTOS, SANTA CRUZ COUNTY, CALIFORNIA", FILED FOR
      RECORD IN THE OFFICE OF THE COUNTY RECORDER ON JUNE 7, 1926 IN MAP BOOK
      23, PAGE 25, SANTA CRUZ COUNTY RECORDS.
23

24    EXCEPTING THEREFROM ALL MINERAL RIGHTS AS RESERVED IN THE DEED FROM
      SANTA CRUZ LAND TITLE COMPANY, A CORPORATION TO SANTA CRUZ COUNTY
      TITLE COMPANY, A CORPORATION, RECORDED FEBRUARY 9, 1953 IN BOOK 902,
25    PAGE 130, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

26    APN: 042-151-18 (Affects: Lot 18 of Parcel Two), 042-151-19 (Affects: Lot 19 of Parcel Two)
      and 042-151-27 (Affects: Parcel One)

27

28  [1]    The legal description is believed to be accurate but may be corrected or updated by the title company in the
      transfer documents as necessary to complete the sale of the Property.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

5

1  In their Amended Bankruptcy Schedule A, the Debtors valued the Property at $903,000.  In their

2  Amended Bankruptcy Schedule D, the Debtors listed the following liens against the Property:

| Creditor | Description | Estimated Amount Owing | Treatment Through the Sale |
|---|---|---|---|
| Wells Fargo | First Deed of Trust | $420,232.00 | Lien shall remain against the Property. |
| Lighthouse Bank | Second Deed of Trust | $150,000.00 | Lien shall remain against the Property. |

8       The Trustee has learned that the Property has a value of approximately $1,200,000 with

9  actual liens against the Property totaling approximately $570,000.

10  **C.    The Offer and Terms of Sale**

11       The Trustee has received an offer from The Duggan Group ("Buyer")[2] to purchase the

12  Estate's tenancy in common interest in the Property for $112,000.00, to be paid in cash.  All

13  liens currently existing against the Property will remain attached.  Attached as **Exhibit "1"** to the

14  Wolfe Declaration is a true and correct copy of the Purchase and Sale Agreement and Escrow

15  Instructions (the "Agreement").  A summary of the Agreement's terms and highlights are

16  discussed below, but the summary and discussion are not meant to be a complete review of every

17  provision of the Agreement.  The Agreement itself is the legally binding document the Trustee

18  seeks approval of and, in the event of any inconsistency between the terms, provisions or effect

19  of the Agreement and the description of it in these pleadings, the Agreement alone shall govern

20  and not these pleadings or the descriptions herein.

21       In summary, the principal terms of the sale of the Estate's interest in the Property shall be

22  as follows (the Trustee is referred to at times as the "Seller" in the following summary):

23       1.    Purchase Price: The purchase price shall be $112,000 and shall be paid, less the

24  Deposit,  upon closing.

25       2.    Deposit: The term "Deposit" shall mean the sum of $25,000 which Buyer will

26  deposit into Escrow as a deposit on the Property ("Deposit") upon the Opening of Escrow.

27  Trustee represents that the Deposit has already been paid.

---

[2]      Patrick Duggan has an ownership interest in The Duggan Group and currently holds an undivided 31.272% interest in the Property.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

3.    <u>Closing of Escrow or Closing Date</u>: The term "Closing of Escrow" or "Closing Date" shall mean the date which is no later than September 20, 2010 whereby the Buyer shall purchase the total sum required for the purchase of the Property.

4.    <u>Escrow</u>: The term "Escrow" shall mean the escrow to be opened with Escrow Holder for the transfer of the Property from the Seller to the Buyer.  Escrow shall be opened upon the mutual execution of this Agreement.

5.    <u>Escrow Holder</u>:  Escrow Holder shall be Shulman Hodges & Bastian LLP, with offices located at 26632 Towne Centre Drive, Suite 300, Foothill Ranch, CA  92610.  In the event Shulman Hodges & Bastian LLP believes in its independent judgment that a transfer to a third party licensed escrow company is advisable, it may transfer the escrow duties specified herein to an independent third party licensed escrow company of its choosing.

6.    <u>Final Order</u>:  The term "Final Order" shall mean an order of the Bankruptcy Court approving this Agreement which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending; or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Trustee and Buyer; or (c) any appeal, petition for certiorari, reargument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or from which certiorari, reargument, or rehearing was sought in Seller's favor.

7.    <u>Opening of Escrow</u>:  The date of delivery of the fully executed originals or counterparts of this Agreement shall be deemed the "Opening of Escrow" and Escrow Holder shall notify the Buyer and the Estate of this date.

8.    <u>Bankruptcy Court Approval</u>.  The sale is expressly conditioned on approval of the United States Bankruptcy Court for the Central District of California, Santa Ana Division and entry of final order approving this Motion.

9.    <u>No Representations</u>.  The sale of the Estate's interest in the Property is "as is – where is."  Thus, the Trustee is not making any representations or warranties, either express or

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

7

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1  implied, as to the Property's condition, uses (prior, present and future), or otherwise.  Moreover,

2  the Trustee shall not warrant or represent the Property's compliance with any applicable federal,

3  state or local environmental laws, zoning laws or applicable regulation.  The Buyer shall agree

4  that the Buyer is acquiring the Property "as is," with all faults and conditions then existing on the

5  Property including any hazardous substances or hazardous waste that may be located on, under

6  or around the Property, whether known or unknown, and the Buyer shall assume all

7  responsibilities for all such faults and conditions, whether disclosed or not.  Moreover, the Buyer

8  shall be expressly aware and fully informed that the Trustee is selling the Property in his capacity

9  as the Chapter 7 Trustee of the Debtors' Estate.

10       10.    Acknowledgement of the Trustee's Capacity.   Since the Trustee is selling the

11  Estate's interest in the Property in his capacity as the Chapter 7 Trustee for the Debtors' Estate

12  and further, since the Debtors' interest in the Property is an asset of the Debtors' Estate, the

13  resolution of any and all disputes between the parties herein concerning the sale transaction shall

14  be resolved by the United States Bankruptcy Court for the Central District of California, Santa

15  Ana Division.  Further, the Trustee has agreed that if a dispute arises, such dispute may initially

16  be resolved through the Mediation Program pending in the United States Bankruptcy Court for

17  the Central District of California.

18       11.    Good Faith Finding.   The proposed sale has been brought in good faith and has

19  been negotiated on an "arms length" basis.  The negotiations with the Buyer have resulted in an

20  offer to sell the Estate's interest in the Property that will have substantial benefit.  Accordingly,

21  the sale is in good faith and should be approved.  The Trustee shall request such a finding

22  pursuant to Bankruptcy Code Section 363(m) at the hearing on this Sale Motion.

23  **D.    Notice of Bidding Procedures**

24       The Trustee has determined that it would benefit the Estate by permitting all interested

25  parties to receive information and bid for the Property instead of selling to the Buyer on an

26  exclusive basis.  Accordingly, in order to obtain the highest and best offer for the benefit of the

27  creditors of this Estate, the Trustee is implementing the following bidding procedures ("Bidding

28  Procedures") and requests that the Court approve the Bidding Procedures in connection with the

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

8

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

approval of the Sale Motion (the Notice of this Sale Motion will include notice of the following bidding procedures):

1.     The potential overbidders must bid an initial amount of at least $5,000 over the price offered for the Property by the Buyer.  Minimum bid increments thereafter shall be $1,000.

2.     Overbids must be in writing and be received by Trustee's counsel, Shulman Hodges & Bastian LLP to the attention of Melissa R. Davis by no later than 5:00 p.m. on the day prior to the hearing on the Sale Motion.

3.     Overbids must be accompanied by a deposit in the form of certified funds in the amount of at least $10,000 payable to "John M. Wolfe, Trustee."

4.     The overbidder must also provide evidence of having sufficient specifically committed funds to complete the transaction or a lending commitment for the bid amount and such other documentation relevant to the bidder's ability to qualify as the purchaser of Property and ability to close the sale and immediately and unconditionally pay the winning bid purchase price at closing.

5.     The overbidder must seek to acquire the Property on terms and conditions not less favorable to the Estate than the terms and conditions to which the Buyer has agreed to purchase the Property, including closing on the sale of the Property in the same time parameters as the Buyer and agreeing that there will be no buyer contingencies.

6.     If overbids are received, the final bidding round for the Property shall be held at the hearing on the Sale Motion in order to allow all potential bidders the opportunity to overbid and purchase the Property.

///

///

///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

9

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1   At the final bidding round to be conducted before the Court, the Trustee will seek entry

2   of an order, inter alia, authorizing and approving the sale of the Property to the bidder who the

3   Trustee, in the exercise of his business judgment, may determine to have made the highest and

4   best offer to purchase the Property, consistent with the Bidding Procedures ("Successful

5   Bidder"). The hearing on the Sale Motion may be adjourned or rescheduled without notice other

6   than by an announcement of the adjourned date at the hearing on the Sale Motion. Seller shall

7   provide Buyer's counsel with any and all notices regarding the hearing on Sale Motion,

8   including any adjournments, rescheduling, or continuances that may be granted.

9   In the event Successful Bidder fails to close on the sale of the Property within the time

10  parameters approved by the Court, the Trustee shall retain the Successful Bidder's Deposit and

11  will be released from his obligation to sell the Property to the Successful Bidder and the Trustee

12  may then sell the Property to the first back-up bidder approved by the Court at the hearing on the

13  Sale Motion.

14  The foregoing procedures will provide for an orderly completion of the sale of the

15  Property and insures that potential overbidders are provided with full disclosure as to the overbid

16  procedures and the specific Property to be sold.  By having all bidders compete on similar terms,

17  the interested parties and the Court may compare competing bids in order to realize the highest

18  benefit for the Estate.   Thus, the Trustee is requesting that the Court approve the overbid

19  procedures as a fair and reasonable method of realizing the highest and best price for the

20  Property for the benefit of the Estate's creditors.

21  **E.      Approval of the Sale Motion Serves the Best Interests of the Estate and Its Creditors**

22  Considering that the sale of the Estate's interest in the Property shall be subject to the

23  overbid procedures, the Trustee believes the Buyer's offer for the purchase of the Estate's

24  interest in the Property to be in the best interest of the Estate and its creditors and that the

25  proposed purchase price of $112,000 subject to overbids is fair and reasonable under the

26  circumstances of this case.  The alternative to the proposed orderly sale and bidding procedures

27  would be the loss of marketable value of the Estate's interest in the Property, which would be

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

10

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1    detrimental to unsecured creditors of the Estate.  Through the sale, it is anticipated that the Estate

2    will generate approximately $112,000 in sale proceeds.

3         In summary, through the proposed sale, the Trustee will preserve a benefit for creditors

4    which may be lost if the Sale Motion is not granted.  Thus, good cause exists to grant the Sale

5    Motion so that the Trustee does not lose this favorable business opportunity.

6         **WHEREFORE**, the Trustee prays that the Court enter an order which provides:

7         1.    Approving the overbid procedures set forth above for the sale of the Estate's

8    interest in the Property.

9         2.    Approving the Agreement and authorizing the Trustee to sell the Estate's interest

10   in the Property to the Buyer subject to the existing liens on the Property.

11        3.    A determination by the Court that the Buyer is in good faith pursuant to

12   Bankruptcy Code Section 363(m).

13        4.    Waiving the fourteen-day stay of the order approving the sale of the Property

14   under Federal Rules of Bankruptcy Procedure 6004(h).

15        5.    For such other and further relief as the Court deems just and proper under the

16   circumstances of this case.

17                              **SHULMAN HODGES & BASTIAN LLP**

18   Dated: July 30, 2010          By:   */s/ Melissa R. Davis*
                                         _____
19                                       Leonard M. Shulman
                                         Melissa R. Davis
20                                       Attorneys for John M. Wolfe, the Chapter 7
                                         trustee for the bankruptcy estate of Alan G. Bevier
21                                       and Catheryn Bevier

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    COURT MAY AUTHORIZE THE SALE OF THE PROPERTY WHEN THERE IS A GOOD FAITH PURCHASER

The Trustee, after notice and hearing, may sell property of the Estate.  11 U.S.C. §363(b). The proponent of the sale must establish that there is a sound business purpose for the sale, that the sale is in the best interests of the Estate, i.e., the sale is for a fair and reasonable price, that there is accurate and reasonable notice to creditors and that the sale is made in good faith.  *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Lionel Corp*., 722 F.2d 1063, 1069 (2d Cir. 1983).  Business justification would include the need to close a sale to one of very few serious bidders where an asset has been extensively shopped and a delay could jeopardize the transaction.  *See, e.g., In re Crowthers McCall Pattner, Inc*., 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) (extreme difficulty finding a buyer justified merger when buyer found).  The Trustee's proposed sale of the Estate's interest in the Property meets the foregoing criteria.

### A.    Sound Business Purpose

The Ninth Circuit in *In re Walter*, 83 B.R. 14 (Bankr. 9th Cir. 1988) has adopted a flexible, case by case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b).  In *Walter*, the Ninth Circuit, adopting the reasoning of the Fifth Circuit in *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986), and the Second Circuit in *In re Lionel Corp*., 722 F.2d 1063 (2d Cir. 1983), set forth the following standard to be applied under Bankruptcy Code Section 363 (b).

> Whether the proffered business justification is sufficient depends on the case.  As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.  He might, for example, look to such relevant factors as the proportionate value of the assets to the estate as a whole, the amount of lapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasingly or decreasing in value.  This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

12

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1   *Walter*, *supra*, at 19-20 [quoting *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.

2   1986)].

3        In the present case, there is a sound business purpose for the sale. The sale as proposed

4   will provide net proceeds to the Estate of approximately $112,000. The Trustee believes that the

5   sale pursuant to this Sale Motion will be at fair market value because it is the highest offer that

6   the Estate has received thus far and it will yield significant equity for the Estate to make the sale.

7   If the sale is not approved, the Estate will not realize any funds and thus there will be no funds to

8   distribute to the Estate's creditors until another buyer can be found. With the current state of the

9   economy, it is very uncertain how long it will take to find another buyer and at what price for the

10  Estate's interest in the Property. The proposed sale gives certainty and allows the Trustee to

11  close the transaction quickly.

12       Therefore, the Trustee respectfully submits that, if this Court applies the good business

13  reason standard suggested by the Second Circuit in *Lionel*, the Sale Motion should be approved.

14  **B.    The Sale Serves the Best Interests of the Estate and Creditors**

15       The benefits to the Estate will be substantial. The Trustee has made a business decision

16  that it is in the best interest of the creditors of this Estate that this Sale Motion be approved. If

17  the sale is approved, there will be a net equity of approximately $112,000.00 in cash, which is

18  much more than the Estate would have if the sale is not approved. Accordingly, it would be in

19  the best interest of the Estate if the sale is approved.

20       Should the sale not be approved, the Trustee would have to bring an adversary complaint

21  pursuant to Section 363(h) to have the ability to sell the Property since the Debtors' interest in

22  the Property is a tenancy in common interest. The currently proposed sale of the Estate's interest

23  in the Property provides certainty and an all-cash payment, not to mention saving the Estate the

24  costs and time which would be necessary if the Trustee were required to employ a broker to

25  market and sell the Estate's interest in the Property, or the fees and costs associated with

26  litigation seeking authority to sell the Property.

27  ///

28  ///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

13

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

**C.    Accurate and Reasonable Notice**

It is expected that notice of this Sale Motion will satisfy the requirements for accurate and reasonable notice and will be appropriate under the circumstances. The Trustee shall provide notice of the proposed sale of the Estate's interest in the Property to the creditors and parties in interest. The Notice of this Sale Motion will include a summary of the terms and conditions of the proposed sale, how to file an objection, and a general description of the Property. The Trustee submits that the notice requirements will have been satisfied, thereby allowing creditors and parties in interest an opportunity to object to the sale. Hence, no further notice should be necessary.

**D.    The Sale is Made in Good Faith**

The proposed sale has been brought in good faith and has been negotiated on an "arms length" basis. The court in *Wilde Horse Enterprises*, set forth the factors in considering whether a transaction is in good faith. The court stated:

> "Good faith" encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers. . . . And, with respect to making such determinations, the court and creditors must be provided with sufficient information to allow them to take a position on the proposed sale. (citations omitted)

Id. at 842.

In the present case, the negotiation of the proposed sale was an arms-length transaction. The Trustee and the Buyer are both represented by counsel and the agreement was reached over a series of negotiations. The negotiations with the Buyer have resulted in an offer to sell the Estate's interest in the Property that will have substantial benefit to the Estate. As set forth in the Notice of the Sale Motion, the creditors will have been provided with sufficient notice of the sale. Accordingly, the sale is in good faith and should be approved. The Trustee shall request such a finding pursuant to Bankruptcy Code Section 363(m) at the hearing on this Sale Motion.

///

///

///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

14

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

## II.    THE COURT HAS AUTHORITY TO APPROVE THE PROPOSED BIDDING PROCEDURES

Implementation of the Bidding Procedures is an action outside of the ordinary course of the business.  Bankruptcy Code Section 363(b)(1) provides that a trustee "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Furthermore, under Bankruptcy Code Section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, pursuant to Bankruptcy Code Sections 363(b)(1) and 105(a), this Court may authorize the implementation of Bidding Procedures.

The Ninth Circuit, in a case under the Bankruptcy Act, recognized the power of a bankruptcy court to issue orders determining the terms and conditions for overbids with respect to a sale of estate assets.  *In re Crown Corporation*, 679 F.2d 774 (9th Cir. 1982).  The <u>Crown Corporation</u> court entered an order specifying the minimum consideration required for an overbid as well as the particular contractual terms required to be offered by overbidders.  <u>Id</u>. at 777.  The <u>Crown Corporation</u> decision also approves an order requiring and setting the amount of potential overbidder's deposits and authorized courts to determine the disposition of such deposits.  <u>Id</u>.  While the discussion is not extensive, the <u>Crown Corporation</u> decision recognizes the authority of bankruptcy courts to order the implementation of bidding procedures such as those proposed in the present case.

### A.    The Overbid Procedures are Untainted by Self-Dealing

The overbid procedures have been proposed in good faith and have been negotiated on an "arms length" basis.  Therefore, there is no prospective taint in dealings between Trustee and any potential bidders.

### B.    The Overbid Procedures Encourage Bidding and are Fair in Amount

The overbid procedures are designed to encourage, not hamper bidding and are reasonable under the circumstances.  The bidding procedures are intended to provide potential overbidders with adequate information to make an informed decision as to the amount of their bid and the validity of their bid.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

15

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

**C.    The Overbid Procedures are Fair, Reasonable and Serve the Best Interests of the Estate**

The proposed overbid procedures serve the Estate in several ways.  First, the procedures themselves are fair, reasonable and productive; they will permit the Trustee to conduct an orderly sale and obtain the best possible price on the best possible terms for the Estate's interest in the Property.

The bidding procedures will ensure that all bids will be comparable.  The Trustee will determine which bid is the highest and best for the Estate.  The comparability requirement of the bidding procedures will make it possible to accomplish this task.

The bidding procedures will help the Trustee to obtain the highest and best possible price for the Estate's interest in the Property. The bidding procedures institute minimum overbid increments which the Trustee believes are reasonable.  Thus, the Trustee will be able to obtain substantial benefit for this Estate from the sale of the Estate's interest in the Property from competing bids.

The bidding procedures require that potential bidders demonstrate their capacity to complete the transaction.  It would be a serious loss to the Estate if it surrendered its opportunity to sell the Estate's interest in the Property to one buyer in favor of a competing bidder only to discover the successful bidder incapable of consummating the transaction.  Thus, requiring bidders to qualify as qualified bidders will protect the Estate from such a loss.

The most important benefit of the bidding procedures to the Estate is that their implementation will enable the consummation of the proposed sale.  The proposed sale will be the best way to obtain the maximum and most expedient recovery for creditors of this Estate. Implementation of the bidding procedures is an essential component of consummating the sale of the Estate's interest in the Property and maximizing the value of same for the Estate and creditors.

The bidding procedures proposed by the Trustee are fair and provide for a "level playing field" for all prospective bidders with respect to the sale. The proposed bidding procedures establish a reasonable but expeditious timeline for allowing the Trustee to give notice of the

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

16

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1  proposed sale and qualified bidders to conduct reasonable due diligence and submit competing

2  offers, thereby potentially generating additional value for the Estate.  Furthermore, the notice that

3  the Trustee proposes to provide to creditors and parties in interest in connection with the bidding

4  procedures and Sale Motion is designed to attract the most interest in the acquisition of the

5  Estate's interest in the Property and is sufficient under the circumstances of this case.  The

6  alternative to the proposed orderly sale and bidding procedures would be the loss of marketable

7  value of the Estate's interest in the Property, which would be detrimental to unsecured creditors

8  of the Estate.  Thus, approval of the bidding procedures would serve the best interests of the

9  Estate and its creditors.

10  **III.    THE COURT HAS AUTHORITY TO WAIVE THE FOURTEEN-DAY STAY OF**

11  **SALE**

12        Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the

13  use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days

14  after entry of the order, unless the Court orders otherwise."

15        The Trustee desires to close the sale of the Property as soon as practicable after entry of

16  an order approving the sale.  Accordingly, the Trustee requests that the Court, in the discretion

17  provided it under Federal Rule of Bankruptcy Procedure 6004(h), waive the fourteen-day stay

18  requirement.

19  **IV.    CONCLUSION**

20        Based upon the foregoing, the Trustee respectfully submits that good cause exists for

21  granting the Sale Motion and granting to the Trustee such other and further relief as may be just

22  and appropriate under the circumstances of this case.

23  **SHULMAN HODGES & BASTIAN LLP**

24  */s/ Melissa R. Davis*

25  Dated: July __, 2010        By:    _____

26  Leonard M. Shulman
   Melissa R. Davis

27  Attorneys for John M. Wolfe, the Chapter 7
   trustee for the bankruptcy estate of Alan G. Bevier

28  and Catheryn Bevier

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

17

## DECLARATION OF JOHN M. WOLFE

I, John M. Wolfe, declare as follows:

1.      I am the duly appointed, qualified and acting Chapter 7 trustee for the bankruptcy estate ("Estate") of In re Alan G. Bevier and Catheryn Bevier (collectively, "Debtors), Case No. 8:09-bk-18292-ES.   If called upon as witness, I could and would competently testify to the following of my own personal knowledge, information and belief.

2.      I am familiar with the Debtors' bankruptcy proceeding and make this Declaration in support of my Motion for Order: (1) Approving the Sale of Debtors' Tenancy in Common Interest in Real Property Subject to all Existing Liens on the Property and Subject to Overbids; (2) Approving Overbid Procedures; and (3) Granting Related Relief ("Sale Motion").[3]

3.      The Court's docket indicates that on August 11, 2009, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtors' Section 341(a) Meeting of Creditors was held and concluded on December 15, 2009.  The Debtors were granted a discharge on February 9, 2010.

4.      In their Amended Bankruptcy Schedule A, the Debtors list an ownership interest in business property located at 131 Esplanade, Aptos, California ("Property").  I have learned that title to the Property is vested as follows:

> Patrick E. Duggan, a married man as his sole and separate property, as to an undivided 31.272% share; Richard L. Baiocchi, a married man as his sole and separate property, as to an undivided 29.8965% share; Alan G. Bevier, a married man as his sole and separate property, as to an undivided 29.8965% share; and Joseph W. Sawyer, as to an undivided 8.935% share; as tenants in common

The Property is legally described as follows[4]:

> PARCEL ONE:

> ALL OF LOTS 16 AND 17, IN BLOCK 53, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF SUBDIVISION NO. 5, APTOS BEACH COUNTRY CLUB PROPERTIES, APTOS, SANTA CRUZ COUNTY, CALIFORNIA", FILED FOR RECORD JUNE 7, 1926 IN VOLUME 23 OF MAPS AT PAGE 25, SANTA CRUZ COUNTY RECORDS.

---

[3]      All capitalized terms not defined herein shall have the meaning set forth in the Sale Motion.

[4]      The legal description is believed to be accurate but may be corrected or updated by the title company in the transfer documents as necessary to complete the sale of the Property.

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

18

EXCEPTING THEREFROM ALL MINERAL RIGHTS AS RESERVED IN THE DEED FROM SANTA CRUZ LAND TITLE COMPANY, A CORPORATION TO SANTA CRUZ COUNTY TITLE COMPANY, A CORPORATION, RECORDED FEBRUARY 9, 1953 IN BOOK 902, PAGE 130, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

PARCEL TWO:

BEING LOTS 18 AND 19, IN BLOCK 53, AS THE SAME ARE SHOWN AND DESIGNATED ON THAT CERTAIN MAP ENTITLED, "SUBDIVISION NO. 5 APTOS BEACH COUNTRY CLUB PROPERTIES, APTOS, SANTA CRUZ COUNTY, CALIFORNIA", FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER ON JUNE 7, 1926 IN MAP BOOK 23, PAGE 25, SANTA CRUZ COUNTY RECORDS.

EXCEPTING THEREFROM ALL MINERAL RIGHTS AS RESERVED IN THE DEED FROM SANTA CRUZ LAND TITLE COMPANY, A CORPORATION TO SANTA CRUZ COUNTY TITLE COMPANY, A CORPORATION, RECORDED FEBRUARY 9, 1953 IN BOOK 902, PAGE 130, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

APN: 042-151-18 (Affects: Lot 18 of Parcel Two), 042-151-19 (Affects: Lot 19 of Parcel Two) and 042-151-27 (Affects: Parcel One)

5.    In their Amended Bankruptcy Schedule A, the Debtors valued the Property at $903,000.  In their Amended Bankruptcy Schedule D, the Debtors listed the following liens against the Property:

| Creditor | Description | Estimated Amount Owing | Treatment Through the Sale |
|---|---|---|---|
| Wells Fargo | First Deed of Trust | $420,232.00 | Lien shall remain against the Property. |
| Lighthouse Bank | Second Deed of Trust | $150,000.00 | Lien shall remain against the Property. |

The Property has a value of approximately $1,200,000 with actual liens against the Property totaling approximately $570,000.

6.    I have read and I am aware of the contents of the Sale Motion and the accompanying Memorandum of Points and Authorities.  The facts stated in the Sale Motion and the Points and Authorities are true to the best of my knowledge.

7.    I have received an offer from The Duggan Group ("Buyer")[5] to purchase the Estate's tenancy in common interest in the Property for $112,000.00, to be paid in cash.  All liens currently existing against the Property will remain attached.  Attached hereto as **Exhibit "1"** and incorporated herein by this reference is a true and correct copy of the Purchase and Sale

---

[5]    Patrick Duggan has an ownership interest in The Duggan Group and currently holds an undivided 31.272% interest in the Property.

SHULMAN HODGES & BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1   Agreement and Escrow Instructions (the "Agreement").  A summary of the Agreement's terms

2   and highlights are discussed in the Sale Motion, but the summary and discussion are not meant to

3   be a complete review of every provision of the Agreement.  The Agreement itself is the legally

4   binding document which I seek approval of and, in the event of any inconsistency between the

5   terms, provisions or effect of the Agreement and the description of it in these pleadings, the

6   Agreement alone shall govern and not these pleadings or the descriptions herein.

7        8.    I have determined that it would benefit the Estate by permitting all interested

8   parties to receive information and bid for the Property instead of selling to the Property to the

9   Buyer on an exclusive basis.  Accordingly, in order to obtain the highest and best offer for the

10  benefit of the creditors of this Estate, I also seek Court approval of the following bidding

11  procedures (the Notice of this Sale Motion will include notice of the following bidding

12  procedures):

13       a.   The potential overbidders must bid an initial amount of at least $5,000 over

14  the price offered for the Property by the Buyer.  Minimum bid increments thereafter shall be

15  $1,000.

16       b.   Overbids must be in writing and be received by Trustee's counsel, Shulman

17  Hodges & Bastian LLP to the attention of Melissa R. Davis by no later than 5:00 p.m. on the day

18  prior to the hearing on the Sale Motion.

19       c.   Overbids must be accompanied by a deposit in the form of certified funds in

20  the amount of at least $10,000 payable to "John M. Wolfe, Trustee."

21       d.   The overbidder must also provide evidence of having sufficient specifically

22  committed funds to complete the transaction or a lending commitment for the bid amount and

23  such other documentation relevant to the bidder's ability to qualify as the purchaser of Property

24  and ability to close the sale and immediately and unconditionally pay the winning bid purchase

25  price at closing.

26  ///

27  ///

28  ///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

20

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

e.   The overbidder must seek to acquire the Property on terms and conditions not less favorable to the Estate than the terms and conditions to which the Buyer has agreed to purchase the Property, including closing on the sale of the Property in the same time parameters as the Buyer and agreeing that there will be no buyer contingencies.

f.   If overbids are received, the final bidding round for the Property shall be held at the hearing on the Sale Motion in order to allow all potential bidders the opportunity to overbid and purchase the Property.

9.    The foregoing procedures will provide for an orderly completion of the sale of the Estate's interest in the Property and insures that potential overbidders are provided with full disclosure as to the overbid procedures and the Property to be sold.  By having all bidders compete on similar terms, the interested parties and the Court may compare competing bids in order to realize the highest benefit for the Estate.  Thus, I am requesting that the Court approve the overbid procedures as a fair and reasonable method of realizing the highest and best price for the Estate's interest in the Property for the benefit of this Estate's creditors.

10.    Considering that the sale of the Estate's interest in the Property shall be subject to the overbid procedures, I believe the Buyer's offer for the purchase of the Estate's interest in the Property to be in the best interest of the Estate and its creditors and that the proposed purchase price of $112,000 subject to overbids is fair and reasonable under the circumstances of this case. The alternative to the proposed orderly sale and bidding procedures would be the loss of marketable value of the Estate's interest in the Property, which would be detrimental to unsecured creditors of the Estate.  Through the sale, it is anticipated that the Estate will generate approximately $112,000 in sale proceeds.  Thus, good causes exists to grant the Sale Motion so that I do not lose the favorable business opportunity.

///

///

///

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

21

G:\Wp\Cases\A-B\Bevier\Pld\Sale Mtn v1.doc
4193-000\EXP. 56

1    11.    I have not been contacted by any potential overbidders for the purchase of the

2  Property and in my business judgment, there are no viable alternative purchasers.

3    I declare under penalty of perjury under the laws of the United States of America that the

4  foregoing is true and correct.

5    Executed on July 29, 2010 at Irvine, California.

6

7

8                                                        John M. Wolfe

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
26632 Towne Centre Drive
Suite 300
Foothill Ranch, CA 92610

G:\Wp\Cases\A-B\Bowen\Pld\Sale Mtn v1.doc
4193-000\EXP, 56

**EXHIBIT "1"**

## PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into as of June ___, 2010 ("Effective Date"), by and among John M. Wolfe, solely in his capacity as the Chapter 7 Trustee ("Trustee" or "Seller") for the bankruptcy estate ("Estate") of Alan G. Bevier and Catheryn Bevier ("Debtors"), on the one hand, and the Duggan Group ("Buyer"), on the other. The Trustee and the Buyer are collectively referred to herein as the "Parties" or individually as a "Party."

## I.  RECITALS:

This Agreement is made by the Parties hereto, with reference to the following facts:

1.1    On August 11, 2009, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court") as Case No. 8:09-bk-18292-ES ("Bankruptcy Case").

1.2    John M. Wolfe is the duly appointed, qualified and acting Chapter 7 trustee in the Debtors' bankruptcy case.

1.3    The Debtors' Section 341(a) Meeting of Creditors was held and concluded on December 15, 2009.

1.4    The Debtors were granted a discharge on February 9, 2010.

1.5    In their Bankruptcy Schedule A, the Debtors list an ownership interest in business property located at 131 Esplanade, Aptos, California ("Real Property"). The Debtors list the fair market value in the Property at $435,000 and liens in the total amount of $1,056,000. The Trustee has learned that the Debtors own a 29.965% tenancy in common interest in the Property.

1.6    Seller desires to sell to Buyer, subject to the overbid procedures set forth below, and Buyer desires to purchase and acquire from Seller all of the Seller's rights, title and interests in the Real Property together with any structures and improvements ("Improvements") located thereon, and the Trustee desires to consent to the purchase and sale and obtain the approval of the Bankruptcy Court therefore, subject to all terms and conditions of this Agreement. The Improvements and the Real Property are collectively referred to as the "Property" in this Agreement.

In consideration of the mutual covenants, promises, agreements, representations and warranties contained in this Agreement, the Parties hereto do hereby covenant, promise, agree, represent and warrant as follows:

## II.  DEFINITIONS

The following terms, wherever used in this Agreement, shall have the respective meanings set forth below:

1.    Closing: The term "Closing" shall mean the recording of a Grant Deed in substantially the form as attached hereto as Exhibit B, with the Office of the County Recorder for the County of Santa Cruz, California, conveying title to the Property from the Seller to the Buyer.

1

# EXHIBIT "1"

2.    <u>Closing of Escrow or Closing Date</u>: The term "Closing of Escrow" or "Closing Date" shall mean the date which is no later than September 20, 2010 whereby the Buyer shall purchase the total sum required for the purchase of the Property.

3.    <u>Deposit</u>: The term "Deposit" shall mean the sum of **Twenty-Five Thousand Dollars ($25,000.00)** which Buyer will deposit into Escrow as a deposit on the Property ("Deposit") upon the Opening of Escrow.

4.    <u>Escrow</u>: The term "Escrow" shall mean the escrow to be opened with Escrow Holder for the transfer of the Property from the Seller to the Buyer. Escrow shall be opened upon the mutual execution of this Agreement.

5.    <u>Escrow Holder</u>: The term "Escrow Holder" shall mean Shulman Hodges & Bastian LLP, with offices located at 26632 Towne Centre Drive, Suite 300, Foothill Ranch, CA 92610. In the event Shulman Hodges & Bastian LLP believes in its independent judgment that a transfer to a third party licensed escrow company is advisable, it may transfer the escrow duties specified herein to an independent third party licensed escrow company of its choosing.

6.    <u>Final Order</u>: The term "Final Order" shall mean an order of the Bankruptcy Court approving this Agreement which has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending; or (b) any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Trustee and Buyer; or (c) any appeal, petition for certiorari, reargument or rehearing has been resolved by the highest court to which the order or judgment was appealed timely or from which certiorari, reargument, or rehearing was sought in Sellers favor.

7.    <u>Good Funds</u>: The term Good Funds shall mean immediately available funds in the form of cash or wire transfer of funds.

8.    <u>Opening of Escrow</u>: The date of delivery of the fully executed originals or counterparts of this Agreement shall be deemed the "Opening of Escrow" and Escrow Holder shall notify the Buyer and the Estate on this date.

9.    <u>Purchase Price</u>: The term "Purchase Price" shall mean the sum of **One Hundred Twelve Thousand Dollars ($112,000.00)**, or an amount as increased by a successful overbid to be paid by the Buyer (provided Buyer is the Successful Bidder) to the Seller in cash for the purchase of the Property pursuant to the terms of this Agreement.

10.    <u>Other Definitions</u>: Terms defined in any other parts of this Agreement shall have the defined meanings wherever capitalized in this Agreement. As used in this Agreement, the terms "herein", "hereof" and "hereunder" refer to this Agreement in its entirety and are not limited to any specific sections, and the term "person" means any natural person, other legal entity, or combination of natural persons and other legal entities. Wherever appropriate in this Agreement, the singular shall be deemed to refer to the plural and the plural to the singular, and pronouns of certain genders shall be deemed to comprehend either or both of the genders.

### III. PURCHASE AND SALE OF THE PROPERTY

1.    <u>Agreement to Purchase</u>: Subject to the terms and conditions of this

2

# EXHIBIT "1"

Agreement, on the Closing Date Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall pay the Purchase Price, acquire and accept from the Seller all of Seller's right, title and interest in and to the Property together with all rights and privileges appurtenant thereto, and all buildings, land improvements and fixtures now located thereon.

2.    Payment of Purchase Price:

a.    Deposit: Concurrent with the Buyer's execution and delivery of this Agreement, the Buyer shall deliver the Deposit to the Escrow Holder. The Deposit shall be applied to the Purchase Price at Closing. If the Closing does not occur, the Deposit shall either be retained by the Seller or returned to the Buyer in accordance with the provisions of this Agreement regarding termination.

b.    Payment of the Balance of the Purchase Price: Upon Closing, the balance of the Purchase Price in an amount equal to **Eighty-Seven Thousand Dollars ($87,000)** or an amount as increased by a successful overbid, plus the Buyer's share of closing costs and prorations as provided under this Agreement shall be paid through Escrow in Good Funds.

3.    Risk of Loss: The Parties agree that the risk of loss to the Property shall transfer to the Buyer immediately upon Closing. The Buyer shall NOT take possession of the Property prior to Closing.

4.    Good Faith of the Buyer: The Seller is to seek and obtain a Bankruptcy Court order determining that the Buyer is in good faith pursuant to Bankruptcy Code section 363(m).

5.    Purchase Without Warranties: The Buyer acknowledges that it is purchasing the Property from the Seller on an "AS IS - WHERE IS" basis without representations or warranties of any kind, express or implied, being given by the Seller, concerning the value, condition or fitness of purpose for any use thereof. The Buyer represents and warrants that it is purchasing the Property as a result of its own investigations and is not buying the Property pursuant to any representation made by any broker, agent, accountant, attorney or employee acting at the direction or on behalf of the Seller. The Buyer acknowledges that the Buyer has inspected the Property, and upon Bankruptcy Court approval of this Agreement, the Buyer forever waives, for itself, and its successors and assigns, any and all claims against the Debtor, the Debtors' Estate, J. Wolfe, as the Trustee of the Estate and in his individual capacity, and his attorneys, agents, and employees, arising or which might otherwise arise in the future concerning the Property.

6.    Overbid Procedures: In order to obtain the highest and best offer for the benefit of the creditors of the Estate, the sale of the Property shall be subject to the following bidding procedures ("Bidding Procedures"):

a.    The potential overbidders must bid an initial amount of at least $5,000 over the purchase price offered for the Property by the Buyer. Minimum bid increments thereafter shall be $1,000.

b.    Overbids must be in writing and be received by the Trustee and the Trustee's counsel, Shulman Hodges & Bastian LLP to the attention of Leonard M. Shulman, by no later than one day prior to the hearing on the motion by the Trustee to the Bankruptcy Court for approval of the Agreement and sale of the Property ("Sale Motion").

# EXHIBIT "1"

c.    Overbids must be accompanied by a deposit ("Overbidder Deposit") in the form of certified funds in the amount of at least Ten Thousand Dollars ($10,000) payable to "John M. Wolfe, Trustee".

d.    The overbidder must also provide evidence of having sufficient specifically committed funds to complete the transaction or a lending commitment for the bid amount and such other documentation relevant to the bidder's ability to qualify as the purchaser of Property and ability to close the sale and immediately and unconditionally pay the winning bid purchase price at closing.

e.    The overbidder must seek to acquire the Property on terms and conditions not less favorable to the Estate than the terms and conditions to which the Buyer has agreed to purchase the Property.

f.    If overbids are received, the final bidding round for the Property shall be held at the hearing on the Sale Motion in order to allow all potential bidders the opportunity to overbid and purchase the Property.  At the final bidding round to be conducted before the Court, the Trustee will seek entry of an order, inter alia, authorizing and approving the sale of the Property to the bidder who the Trustee, in the exercise of his business judgment, may determine to have made the highest and best offer to purchase the Property, consistent with the Bidding Procedures ("Successful Bidder"). The hearing on the Sale Motion may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the hearing on the Sale Motion. Seller shall provide Buyer's counsel with any and all notices regarding the hearing on Sale Motion, including any adjournments, rescheduling, or continuances that may be granted.

g.    In the event Successful Bidder fails to close on the sale of the Property within the time parameters approved by the Court, the Trustee shall retain the Successful Bidder's Deposit and will be released from his obligation to sell the Property to the Successful Bidder and the Trustee may then sell the Property to the first back-up bidder approved by the Court at the hearing on the Sale Motion ("First Back-Up Bidder").

h.    In the event First Back-Up Bidder fails to close on the sale of the Property within the time parameters approved by the Court, the Trustee shall retain the First Back-Up Bidder's Deposit and will be released from his obligation to sell the Property to the First Back-Up Bidder and the Trustee may then sell the Property to the second back-up bidder approved by the Court at the hearing on the Sale Motion ("Second Back-Up Bidder").

7.    <u>Bankruptcy Court Approval</u>: The Seller agrees to proceed in good faith to obtain Bankruptcy Court approval of the sale contemplated herein and entry of a Final Order approving this Agreement.  This Agreement is subject to approval by the United States Bankruptcy Court for the Central District of California, Santa Ana Division and entry of a Final Order and termination of any appeals related thereto in the Debtors' bankruptcy case.  The Agreement is expressly contingent upon the Seller obtaining Bankruptcy Court approval of the sale of the Property with a finding that Buyer is in good faith pursuant to Bankruptcy Code section 363(m).  The Seller makes no warranties, either express or implied, as to his ability to obtain approval of the Bankruptcy Court and entry of a Final Order, and in the event that the Seller is unable to obtain said approval and Final Order, the Buyer its officers, directors, shareholders, agents, successors and assigns shall hold the Seller, his attorneys, agents and brokers harmless from any and all damages which the Buyer may allege it has suffered as a result therefrom.  Buyer's Deposit shall be immediately refunded in the event such approval is not obtained.

4

# EXHIBIT "1"

8.    <u>Unknown Contingencies</u>: If the Trustee is unable to complete the sale of the Property because of unknown defects in the title, or because the liens and encumbrances exceed the amounts known to the Trustee, or by being divested of title by the Bankruptcy Court, or because the income tax consequences of the sale are excessive, the Buyer's sole damages will be limited to the refund of his Deposit.

9.    <u>Final Order</u>.  This Agreement shall become final upon the entry of a Final Order authorizing the Trustee to enter into it and approving the terms set forth herein. Upon entry of the Final Order approving this Agreement, Closing for the purchase of the Property pursuant to the terms of this Agreement shall proceed without any undue delay. The Parties agree that with respect to the provisions of this paragraph, time is of the essence.

10.    <u>Escrow Charges Paid on Buyer's Default</u>:  In the event the Escrow and this Agreement are canceled and terminated due to Buyer's default, Buyer's Deposit shall be applied to pay all Escrow cancellation charges.

## IV. <u>TERMINATION</u>

1.    <u>Termination</u>: Upon any termination of this Agreement, the Escrow for the purchase of the Property shall be canceled, all instruments shall be returned to the respective Parties who executed the same and neither Party shall any further obligation to the other as to the Property except as otherwise set forth in this Agreement.  This Agreement may be terminated as follows:

a.    <u>By Either Party</u>: Buyer may terminate this Agreement by giving written notice to Seller at any time prior to the Closing in the event Seller is in breach of any representation, warranty, or covenant contained in this Agreement in any material respect or are otherwise unable to fulfill their conditions to the Closing, and Seller may terminate this Agreement by giving written notice to Buyer at any time prior to the Closing in the event the Buyer is in breach of any representation, warranty or covenant contained in this Agreement in any material respect or is otherwise unable to fulfill its conditions to the Closing, it being understood and agreed that TIME SHALL BE OF THE ESSENCE with respect to the performance of Buyer's and Seller's obligations hereunder; provided that, any such breach by a party shall trigger an obligation by the non-breaching party to provide prompt notice to the breaching party of the alleged breach (to the extent that the non-breaching party is aware thereof and to the extent that any such alleged breach is curable), including a detailed description of the facts and circumstances giving rise to such alleged breach, and the breaching party shall have a period of fifteen days following receipt of such notice to cure the alleged breach (but in any event to have been completed no later than the day preceding the Closing Date).

b.    <u>By the Seller</u>: If the Seller is unable to obtain Bankruptcy Court approval of this Agreement, or because of unknown defects in the title, or because the liens and encumbrances exceed the amounts known to the Trustee, or by being divested of title by the Bankruptcy Court, or because the income tax consequences of the sale are excessive.

c.    <u>By Buyer and Seller by Mutual Consent</u>:  Buyer and Seller may terminate this Agreement by mutual written consent at any time prior to the Closing.

d.    <u>Buyer or Seller</u>: Buyer or Seller may terminate this Agreement if the Final Order approving this Agreement has not been entered on or before forty-five days

5

# EXHIBIT "1"

after execution of this Agreement ("Sale Order Deadline"), or such Final Order remains stayed on such date or has been modified or reversed on appeal.

2.    <u>Notification</u>: The rights of termination provided herein shall be exercised by written notice of termination given by the terminating Party to the other Party in the manner provided below for Notices.  Should the termination of this Agreement be as a result of any election permitted under this Agreement by either Party (and provided the terminating Party is not otherwise in default hereunder) the Buyer shall pay one-half (1/2) and the Seller shall be one-half (1/2) of all Escrow cancellation fees and the Deposit shall be returned to the Buyer.

## V.  <u>ACTIONS AT THE CLOSING; APPORTIONMENT</u>

1.    <u>Balance of the Purchase Price</u>: The balance of the Purchase Price, together with any additional prorations and costs chargeable to the Buyer pursuant to this Agreement, shall be deposited by the Buyer with the Escrow Holder in Good Funds on or before the Closing Date (provided in any case such funds shall be deposited in time to allow for the recording of the Grant Deed and the close of Escrow on the Closing Date) and shall be disbursed by the Escrow Holder to the Seller at the Closing.  Escrow Holder is instructed to withhold from the amount disbursed to the Seller the prorations and costs chargeable to the Seller.

2.    <u>Fees and Expenses</u>:  Buyer shall bear the cost of all deed recording fees, one-half of the Escrow fees, settlement fees, and tax certificates.  Seller shall pay for real estate brokerage commissions and documentary transfer tax and notary fees.  Buyer and Seller shall each pay the fees of its respective attorneys and other consultants.

3.    <u>Execution of Documents</u>: The Seller shall execute the Grant Deed in the form attached hereto as <u>Exhibit A</u> and such other agreements and document as necessary to effectuate the Transaction, all of which shall be deposited with the Escrow Holder at least two (2) business days prior to the Closing Date.  The original recorded Grant Deed shall be returned by the Santa Cruz County Recorder's Office to the Buyer and the Escrow Holder shall obtain at recording a conformed copy of the Grant Deed and deliver a copy to the Buyer and the Seller.  On and after the Closing Date, the parties agree that they will execute any and all additional documents and take all additional steps which may be necessary or convenient to consummate the Agreement and accomplish the purposes thereof.

4.    <u>Insurance.</u> Any insurance which Seller may have maintained related to the Property will terminate on at the Closing.  Buyer is advised to obtain appropriate insurance to cover the Property.

5.    <u>Apportionment</u>: All items of income and expense relating to the Property, including, without limitation, collected rent and additional rent, real estate taxes, all utilities applicable to the Property, other operating charges, and any other matters customarily adjusted at Closing are to be adjusted as of midnight of the day immediately preceding the Closing Date.  All prorations shall be made based upon actual days elapsed using a thirty (30) day month and a three hundred and sixty (360) day year.  There shall be no proration of, or credit to the Buyer of, any tenant security deposits, rents, any additional rent, common area payment, impounds or insurance.  To the extent any apportionment cannon be completed, the Parties shall make such necessary apportionments to commercially complete and pay such amount within a period of thirty (30) days after Closing.  Anything to the contrary notwithstanding herein, the provisions of this section shall survive Closing to the extent necessary to fully allocated such amounts.

6

# EXHIBIT "1"

Notwithstanding anything herein to the contrary, the Seller reserves the right to keep, collect and retain any funds, rate or price reductions or other sums which related to the periods prior to the Closing of Escrow, including, without limitation, any property tax refunds or reductions, whether or not such sums are collected after the Closing, and the Buyer shall promptly remit to the Seller any such sums received by the Buyer.

## VI. CONDITIONS PRECEDENT

1.      Conditions to the Buyer's Obligation: The Buyer's obligation of performance under this Agreement shall be subject to the following conditions precedent:

a.      There being no breach of the representations and warranties of the Seller under this Agreement as of the date of Closing.

b.      Entry of a Final Order by the Bankruptcy Court pursuant to Bankruptcy Code Sections 105, 363, 363m and 365 in the Bankruptcy Case.  The Buyer hereby acknowledges and agrees that the authorization of the Bankruptcy Court for the sale of the Property under this Agreement may be made subject to higher and better offers for the purchase of the Property under the Bidding Procedures as provided in Section III6.

c.      There shall be no substantial change in the Property from the date of this Agreement.

d.      Seller's performance in a timely fashion of all covenants of the Seller under this Agreement.

2.      Notification by the Buyer of Failure of the Conditions Precedent: Any failure of such foregoing conditions shall be identified by the Buyer by written notice to the Seller and completion of the Closing shall be deemed evidence of the Buyer's satisfaction of or waiver of all of the foregoing conditions.

3.      Conditions to the Seller's Obligations: The Seller's obligations of performance under this Agreement shall be subject to the following conditions precedent:

a.      There being no breach of the representations and warranties of the Buyer under this Agreement as of the date of Closing.

b.      The Seller's receipt from the Buyer of the cash or wire transfer which, when taken together with the Deposit, totals the Purchase Price and the Buyer's share of the closing costs and prorations.

c.      The Buyer's performance in a timely fashion of all covenants of the Buyer under this Agreement.

d.      Receipt of the Bankruptcy Court approval and entry of a Final Order approving this Agreement.  The Seller agrees to proceed in good faith to obtain Bankruptcy Court approval of the sale contemplated herein.  The Agreement is expressly contingent upon the Seller obtaining Bankruptcy Court approval of the sale of the Property with a determination that Buyer is in good faith pursuant to Bankruptcy Code section 363(m).  The Seller makes no warranties, either express or implied, as to his ability to obtain approval of the Bankruptcy Court, and in the event that the Seller is unable to obtain said approval, the Buyer its officers, directors, shareholders, agents, successors and assigns shall hold the Seller, his attorneys, agents and brokers harmless from any and all damages which the Buyer may allege it has suffered as a result therefrom.  Buyer's Deposit shall be

7

# EXHIBIT "1"

immediately refunded in full in the event such approval is not obtained.

4.    Notification by the Seller of Failure of the Conditions Precedent: Any failure of such foregoing conditions shall be identified by the Seller by written notice to the Buyer and completion of the Closing shall be deemed evidence of the Seller's satisfaction of or waiver of all of the foregoing conditions.

5.    Waiver of Objections: Either party may waive any and all objections to any condition precedent to its performance and proceed with this Agreement by giving written notice thereof to the other party and the Escrow Holder.

## VII.    DAMAGE, DESTRUCTION OR CONDEMNATION

1.    Damage, Destruction or Condemnation: In the event that prior to the Closing, all or a material portion of the Property is damaged, destroyed or taken by eminent domain, the Seller shall provide the Buyer copies of the documentation relating to such damage, destruction or taking for the Buyer's review. Within five (5) days after the Buyer's receipt of such documentation, the Buyer shall at its election:

a.    Terminate this Agreement in accordance with the provisions under this Agreement and receive full refund of Buyer's Deposit; or

b.    Continue this Agreement in force, in which case, upon Closing, the Buyer shall be entitled to:

i.    All insurance proceeds, if any, which may be payable to the Seller in connection with any damage or destruction, and

ii.    All proceeds which are payable to the Seller in connection with a condemnation (or a sale under threat thereunder), and further provided the Buyer shall not be entitled to any portion of any such award or proceeds which relates to the Debtors' Estate's business goodwill, if any. The Parties acknowledge the Debtors have ceased to operate the business for several months and any award allocated to business goodwill can only be nominal.

2.    Damage, Destruction or Condemnation to Less Than a Material Portion of the Property: In the event there is damage, destruction or the taking by eminent domain of less than a material portion of the Property, then the Buyer and the Seller shall proceed to Close the Escrow for the purchase of the Property pursuant to the terms of this Agreement and the Buyer shall be entitled to insurance proceeds payable under condemnation as provide above. As used herein, "less than a material portion of the Property" shall mean any damage, destruction or taking by eminent domain which is less than or equal to Fifty Thousand Dollars ($50,000.00.) and any taking of a portion of the Property with a value of less than or equal to Fifty Thousand Dollars ($50,000.00).

## VIII.    WARRANTIES, REPRESENTATIONS AND COVENANTS OF THE

## SELLER

1.    Trustee's Authority: Subject to the Bankruptcy Court approval of this Agreement and all other documents to be executed by the Seller and delivered to the Buyer, prior to or at the Closing, have been or shall be duly authorized an executed and delivered by the Seller, shall be legal, valid and binding obligations of the Debtors' Estate

8

# EXHIBIT "1"

and shall be enforceable in accordance with their respective terms.

2.    <u>No Indemnity</u>:  Buyer acknowledges that the Trustee will not indemnify the Buyer with regard to any matters relating to the sale of the Property.

3.    <u>Purchase Without Warranties</u>: The Buyer acknowledges that it is purchasing the Property from the Seller on an "AS IS - WHERE IS" basis without representations or warranties of any kind, express or implied, being given by the Seller, concerning the value, condition or fitness of purpose for any use thereof (prior, present and future), or otherwise. The Trustee does not warrant or represent the Property's compliance with any applicable federal, state or local environmental laws, zoning laws or applicable regulations.   The Buyer shall agree that as of the Closing, the Buyer is acquiring the Property "as is," with all faults and conditions then existing on the Property, including any hazardous substances or hazardous waste" (as defined below) that may be located on, under or around the Property, whether known or unknown, and Buyer shall assume all responsibilities for all such faults and conditions, whether disclosed or not.  The Buyer represents and warrants that it is purchasing the Property as a result of its own investigations and is not buying the Property pursuant to any representation made by any broker, agent, accountant, attorney or employee acting at the direction or on behalf of the Seller.  The Buyer acknowledges that the Buyer has inspected the Property, and upon Bankruptcy Court approval of this Agreement, the Buyer forever waives, for itself, and its successors and assigns, any and all claims against the Debtor, the Debtors' Estate, A. Cisneros, as the Trustee and in his individual capacity, and his attorneys, agents, and employees, arising or which might otherwise arise in the future concerning the Property.  "Hazardous materials" as used in this Agreement, is defined to include any hazardous or toxic substance, material or waste which is or becomes regulated by any local governmental authority, the State of California, the United States government due to its toxicity, corrosiveness, reactivity or risk to public health and/or safety, including, without limitation, petroleum or petroleum products or any distillate thereof, PCB's and asbestos.

4.    <u>Survivability</u>: The Seller's warranties, representations and covenants in this Agreement and the Debtors' Estate's liability for any breach thereof shall survive the Closing Date.

## IX. <u>WARRANTIES, REPRESENTATIONS AND COVENANTS OF THE</u>

## <u>BUYER; CONDITION OF THE PROPERTY</u>

1.    <u>Buyer's Representations and Warranties</u>: The Buyer hereby warrants, represents and covenants to and with the Seller, all of which shall be true and correct on the Closing Date, as follows:

a.    <u>Power and Authority</u>: The Buyer has the requisite capacity and authority to enter into and perform this Agreement, and no additional consents or approval, including, without limitation, spousal, court or governmental approvals, are required in connection therewith.

b.    <u>Authorization of Agreement</u>.  Buyer has taken all actions required on its part by law in order to consummate the transactions contemplated hereby.

c.    <u>Execution, Delivery and Performance</u>.  This Agreement has been duly executed and delivered by Buyer and constitutes the valid and binding obligation of the Buyer and, subject to the approval of the Bankruptcy Court, is enforceable against the Buyer in accordance with its terms, except as may be limited by applicable bankruptcy,

9

# EXHIBIT "1"

insolvency, reorganization, moratorium and other similar laws of general application which may affect the enforcement of creditors rights generally and by general equitable principles.

        d.    <u>Effect of Agreement</u>.  The execution and delivery by Buyer of this Agreement, the purchase by Buyer of the Property, the performance by Buyer of his obligations pursuant to the terms of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not, with or without the giving of notice or lapse of time, or both:  (a) violate any provision of law, statute, rule, regulation or executive order to which Buyer or any of its assets or properties is subject which could have a material adverse effect on Buyer; or (b) violate any judgment, order, writ or decree of any court or administrative body applicable to Buyer or any of Buyer's assets or properties.

        e.    <u>Litigation</u>.  There is no litigation, nor any order, decree or judgment, in progress or pending, or, to the knowledge of Buyer, threatened, against or relating to Buyer and, to Buyer's knowledge, no facts or circumstances exist which would reasonably be expected to give rise to litigation which would prevent, restrain or affect Buyer's ability to perform the transaction contemplated by this Agreement.

        f.    <u>Indemnification</u>:  The Buyer agrees to indemnify, defend and hold the Seller and the Debtors' Estate harmless from and against all claims, losses, expenses, liabilities, liens and causes of action (including, without limitation, reasonable attorneys' fees and costs of proceedings) which may be asserted against any such indemnified parties by reason of:

        i.    Any act or omission of the Buyer as a result of the Buyer's ownership of the Property for all periods following the Closing Date;

        ii.    The use or occupation of the Property for all periods following the Closing; and

        iii.    The breach of any of the representations, warranties, covenants or agreements made in this Agreement by the Buyer.

    2.    <u>Buyer's Reliance on its Own Inspections</u>:  The Buyer covenants and agrees that except as set for in this Agreement, it is relying upon its own inspections, examinations, studies, inquiries, and personal knowledge with respect to the Property an has not relied upon any representation, warranty or statement of the Seller, the Debtors' Estate or its agents, or employees, which will be complete as of the date of the Closing. The Buyer, upon the Closing Date shall be deemed to have disclaimed and waived any and all objections to the physical and environmental characteristics and conditions of the Property including, without limitation, any hazardous materials located thereon and the condition of title thereto whether or not such conditions would be disclosed by a reasonable and diligent inspection. Except as expressly set forth in this Agreement, neither the Seller, or the Debtors' Estate, its officers, directors, employees, agents, or representatives has made any representations, warranties or agreements to or with the Buyer as to any matters concerning the Property, the present use thereof, the existence of hazardous materials thereon, of the suitability of the Property or the Buyer's intended or contemplated use. The foregoing disclaimers and waivers includes, without limitation, topography, climate, air, water rights, utilities, present and future zoning, governmental restrictions, soil, subsoil, environmental contamination, the purpose to which the Property is suited, drainage, access to public roads, proposed routes or roads or extensions thereof or the availability of governmental permits or approvals of any kind. The Buyer agrees that

# EXHIBIT "1"

the Seller and the Debtors' Estate shall have no responsibility for any patent or latent defect or physical condition of the Property, whether or not known or discovered, and the Buyer accepts all such responsibility. The Property is being transferred and sold "AS IS - WHERE IS" with all faults without representation or warranty expressed or implied by the Seller or the Debtors' Estate by operation of law or otherwise. The Seller expressly disclaims, which the Buyer hereby acknowledges and accepts, any implied warranty of condition, habitability, merchantability, or fitness for a particular purpose or use.

3. Buyer has completed its own due diligence with respect to title issues and is responsible for obtaining its own title insurance with respect thereto.

4. Buyer's Closing Funds: On or before the Closing Date, Buyer shall have the necessary funds immediately available to consummate the transaction contemplated by this Agreement and there is no financing contingency with respect to Buyer's obligations in connection with this transaction.

5. Disclaimer of Warranties; "AS-IS AND WHERE-IS" Conveyance.

THE SALE OF THE PROPERTY IS AND WILL BE "**AS-IS, WHERE-IS, WITH ALL FAULTS**" AND, BUYER WILL BE ACCEPTING THE PROPERTY BASED SOLELY ON HIS AND HIS CONSULTANTS' AND ADVISORS' INSPECTION AND INVESTIGATION OF THE PROPERTY. WITHOUT LIMITING THE FOREGOING, BUYER ACKNOWLEDGES THAT NEITHER TRUSTEE NOR DEBTORS NOR THEIR AGENTS, PARTNERS, REPRESENTATIVES ATTORNEYS NOR ANY OTHER PERSON OR ENTITY ON THEIR BEHALF HAS MADE ANY REPRESENTATIONS OR WARRANTIES AS TO ANY MATTERS CONCERNING THE PROPERTY INCLUDING, WITHOUT LIMITATION, A) THE TITLE TO THE PROPERTY, (B) THE ENVIRONMENTAL CONDITION OF THE PROPERTY (INCLUDING, BUT NOT LIMITED TO, THE PRESENCE OR ABSENCE OF HAZARDOUS SUBSTANCES ON OR AFFECTING THE PROPERTY, WATER, SOIL, GEOLOGY, AND IMPROVEMENTS), (C) THE FINANCIAL CONDITION OF THE PROPERTY, (D) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND/OR USES WHICH MAY BE CONDUCTED THEREON, (E) THE COMPLIANCE OF OR BY THE PROPERTY WITH ANY AND ALL LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY (INCLUDING, BUT NOT LIMITED TO, ZONING AND BUILDING CODES OR THE STATUS OF ANY DEVELOPMENT OR USE RIGHTS RESPECTING THE PROPERTY), (F) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, OR (G) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY (INCLUDING, BUT NOT LIMITED TO, ANY MATTER CONCERNING OR RESPECTING ANY INCOME, EXPENSES, CHARGES, LIENS OR ENCUMBRANCES, RIGHTS OR CLAIMS ON, AFFECTING OR PERTAINING TO THE PROPERTY OR ANY PART THEREOF), AND SPECIFICALLY, THAT THE PARTIES HAVE NOT MADE, DO NOT MAKE AND SPECIFICALLY NEGATE AND DISCLAIM ANY REPRESENTATIONS OR WARRANTIES REGARDING COMPLIANCE OF THE PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAW, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THOSE PERTAINING TO SOLID WASTE, AS DEFINED BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS AT 40 C.F.R., PART 261, OR THE DISPOSAL OR EXISTENCE, IN OR ON THE REAL PROPERTY, OF ANY HAZARDOUS SUBSTANCES, AS DEFINED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND

11

# EXHIBIT "1"

THE REGULATIONS PROMULGATED THEREUNDER AND ANY AND ALL SIMILAR STATE, COUNTY AND LOCAL LAWS AND ORDINANCES AND THE REGULATIONS NOW OR HEREAFTER ADOPTED, PUBLISHED AND/OR PROMULGATED PURSUANT THERETO.

AS A MATERIAL PART OF THE CONSIDERATION FOR THE SALE OF THE PROPERTY, AND EXCEPT FOR CLAIMS EXPRESSLY RESERVED HEREIN, BUYER HEREBY WAIVES AND RELEASES THE TRUSTEE AS AN INDIVIDUAL AND IN HIS CAPACITY AS A FIDUCIARY FOR THE DEBTORS' ESTATE AND HIS COUNSEL, AND AFFILIATES FROM, ANY AND ALL CLAIMS THAT ARE BASED DIRECTLY OR INDIRECTLY ON, ARISE FROM OR IN CONNECTION WITH, OR ARE RELATED TO THE PROPERTY (OR THE TRUSTEE'S ADMINISTRATION OF THE ESTATES) INCLUDING BUT NOT LIMITED TO THE FOLLOWING, (A) THE TITLE TO THE PROPERTY, (B) THE ENVIRONMENTAL CONDITION OF THE PROPERTY (INCLUDING, BUT NOT LIMITED TO, THE PRESENCE OR ABSENCE OF HAZARDOUS SUBSTANCES ON OR AFFECTING THE PROPERTY, WATER, SOIL, GEOLOGY, AND IMPROVEMENTS), (C) THE FINANCIAL CONDITION OF THE PROPERTY, (D) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND/OR USES WHICH MAY BE CONDUCTED THEREON, (E) THE COMPLIANCE OF OR BY THE PROPERTY WITH ANY AND ALL LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY (INCLUDING, BUT NOT LIMITED TO, ZONING AND BUILDING CODES OR THE STATUS OF ANY DEVELOPMENT OR USE RIGHTS RESPECTING THE PROPERTY), (F) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, OR (G) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY SO LONG AS SUCH MATTERS AND ISSUES PERTAIN TO OR ARISE SOLELY IN REGARD TO OR FROM THE TRANSFER FROM THE SELLER TO THE BUYER, AND SPECIFICALLY, THAT THE PARTIES HAVE NOT MADE, DO NOT MAKE AND SPECIFICALLY NEGATE AND DISCLAIM ANY CLAIMS ARISING FROM ISSUES OF COMPLIANCE OF THE PROPERTY WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAW, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THOSE PERTAINING TO SOLID WASTE, AS DEFINED BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS AT 40 C.F.R., PART 261, OR THE DISPOSAL OR EXISTENCE, IN OR ON THE PROPERTY, OF ANY HAZARDOUS SUBSTANCES, AS DEFINED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND THE REGULATIONS PROMULGATED THEREUNDER AND ANY AND ALL SIMILAR STATE, COUNTY AND LOCAL LAWS AND ORDINANCES AND THE REGULATIONS NOW OR HEREAFTER ADOPTED, PUBLISHED AND/OR PROMULGATED PURSUANT THERETO.

BUYER HEREBY ACKNOWLEDGES AND AGREES THAT HE MAY HEREAFTER DISCOVER FACTS DIFFERENT FROM OR IN ADDITION TO THOSE NOW (OR AS OF THE CLOSING) KNOWN OR BELIEVED TO BE TRUE REGARDING THE PROPERTY; AND/OR PROPERTY INFORMATION. BUYER'S AGREEMENT TO RELEASE, ACQUIT AND DISCHARGE THE SELLER AS SET FORTH HEREIN SHALL REMAIN IN FULL FORCE AND EFFECT, NOTWITHSTANDING THE EXISTENCE OR DISCOVERY OF ANY SUCH DIFFERENT OR ADDITIONAL FACTS. BUYER KNOWINGLY AND VOLUNTARILY WAIVES ANY AND ALL RIGHTS, BENEFITS AND PRIVILEGES TO THE FULLEST EXTENT PERMISSIBLE UNDER ANY FEDERAL, STATE, LOCAL, OR OTHER LAWS WHICH DO OR WOULD NEGATIVELY AFFECT THE

12

# EXHIBIT "1"

VALIDITY OR ENFORCEABILITY OF ALL OR PART OF THE RELEASES SET FORTH IN THIS AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING WAIVER, BUYER ACKNOWLEDGES THAT HE HAS, WITH HIS LEGAL COUNSEL, CONSIDERED CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOW BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

AND, BEING AWARE THAT SAID PROVISION MIGHT OTHERWISE APPLY TO AND LIMIT THE EFFECT OF BUYER'S WAIVER AND RELEASE HEREIN, KNOWINGLY WAIVES THE BENEFITS OF SUCH STATUTE AND INTENDS THAT IT NOT SO APPLY

6.    Survivability: The Buyer's warranties, representations and covenants in this Agreement and the Buyer's liability for any breach thereof shall survive the Closing Date and shall insure to the benefit of the Debtors' bankruptcy and its successors and assigns.

## X. **MISCELLANEOUS**

1.    No Assignment:  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.  Except as herein provided, no Party may assign any of its rights, or delegate any of its duties or obligations (by operation of law or otherwise), under this Agreement without the prior written consent of the other Party, and any such purported assignment or delegation shall be void ab initio; provided, however, that Buyer may assign to one or more affiliated entities (to be formed prior to Closing) all or any portion of its rights to purchase the Property under this Agreement, without the prior consent of Seller or any other person; however, such an assignment will not negate or invalidate the Buyer's obligations and duties under this Agreement.  For purposes of this Section an "affiliated entity" means any entity fifty percent (50%) or more of which is owned by Buyer or any member of the Buyer limited liability company.

2.    Bankruptcy Court Jurisdiction: The Property is under the jurisdiction of the Bankruptcy Court and considered to be an asset of the Estate, thus the resolution of any and all disputes between the Trustee and the Buyer concerning the Property shall be resolved by the United States Bankruptcy Court for the Central District of California, Santa Ana Division.  Further, if a dispute arises, such dispute may initially be resolved through the Mediation Program pending in the United States Bankruptcy Court for the Central District of California.

3.    Acknowledgment of the Trustee's Capacity: The Buyer shall be expressly aware and fully informed that the Trustee is selling the Property exclusively in his capacity as the Chapter 7 Trustee of the Debtors' Estate.  No personal liability for costs, fees or other charges on the Trustee's part is intended, any liability is strictly the liability of the Debtors' Estate. Buyer acknowledges that the Trustee is acting in his official capacity only. No personal liability shall be sought or enforced against the Trustee with regard to this

13

# EXHIBIT "1"

Agreement and any addenda thereto, the sale of the Property, or the physical condition of the Property. In the event that the Trustee fails or refuses to complete the transaction for any reason, then the limit of the Trustee's liability is only to return any money paid to the Trustee by the Buyer, without deduction. Prior to and after the closing of Escrow, the Untied States Bankruptcy Court for the Central District of California, Santa Ana Division shall have and retain the sole and exclusive jurisdiction over the Property of this transaction and this Agreement; and all disputes arising before and after closing shall be resolved in said Bankruptcy Court. In the event that the Trustee fails or refuses to complete the transaction for any reason, then the limit of the Trustee's liability is only to immediately upon demand return any money paid to the Trustee by the Buyer, without deduction. All other liability of the Trustee, or his agents or attorneys, is hereby released.

4.    Successors and Assigns: This Agreement and all provisions hereof shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns, provided however, other than as specifically provided in this Agreement, that the Buyer may not assign this Agreement nor any of its obligations hereunder without the prior written consent of the Trustee, which consent may be given or withheld by the Seller in his sole and arbitrary discretion. Any attempted assignment made in violation of this provision shall be null and void.

5.    Confidential Information: All information given by any Party hereto to the other Party shall be used only for the purposes of this Agreement and the transactions contemplated hereby and shall be treated and not disclosed to others insofar as such information has been published or is a matter of public knowledge or is required to be disclosed by law.

6.    Attorneys' Fees and Costs: All Parties hereto shall bear their own attorneys' fees, expenses, and costs incurred in connection with the disputes between the Parties hereto and in the preparation of this Agreement. In the event of any action or proceeding brought by either Party against the other under the Agreement, the prevailing Party shall be entitled to recover for the fees of its attorneys in such action or proceeding, including costs of appeal, if any, in such amount as the Court may adjudge as reasonable attorneys' fees and costs.

7.    Notices: All notices, demands and other communications (collectively, "Notices") given or made pursuant to this Agreement shall be in writing and shall be deemed to have been duly given if sent by registered or certified mail, return receipt requested, postage and fees prepaid, by overnight service with a nationally recognized "next day" delivery company, by facsimile transmission, or otherwise actually delivered to the addresses set forth below for Buyer and Seller. Any Notice shall be deemed duly given when received by the addressee thereof, provided that any Notice sent by registered or certified mail shall be deemed to have been duly given two business days after the date of deposit in the United States mails, unless sooner received. Any of the Parties to this Agreement may from time to time change its address for receiving Notices by giving written notice thereof in the manner set forth above:

If to the Seller:                          John M. Wolfe, Chapter 7 Trustee
                                          5450 Trabuco Road
                                          Irvine, CA  92620

14

# EXHIBIT "1"

With a Copy to:                          Shulman Hodges & Bastian LLP
                                         Attn: Leonard M. Shulman
                                         26632 Towne Centre Drive, Ste 300
                                         Phone: 949-340-3400
                                         Facsimile: 949-340-3000
                                         Email: lshulman@shbllp.com


If to the Buyer:                         The Duggan Group


With a Copy to:                          James Sullivan
                                         Law Offices of James M. Sullivan, Inc.
                                         225 North Santa Cruz Avenue
                                         Los Gatos, CA 95030-7275
                                         Phone: 408-395-3837
                                         Facsimile: 408-354-8040


8.    Integrity of this Agreement:  This Agreement supersedes all other offers. No part of any of the previous offers shall be used to interpret the terms of this Agreement.

9.    Binding: This Agreement shall be binding on the Parties hereto when each such Party has executed at least one counterpart, subject only to United States Bankruptcy Court for the Central District of California approval.

10.    Entire Agreement, Written Modification and Amendment:  This Agreement, including the exhibits hereto and all other instruments and documents delivered pursuant hereto, contains the entire agreement between the Parties pertaining to the subject matter hereof and supercedes all prior agreements, letters of intent, understandings and representations of the Parties with respect to the subject matter hereof.  This Agreement may not be modified, amended, supplemented or otherwise changed except by a writing executed by the Seller and the Buyer.  The failure of any Party at any time or times to require performance of any provision of this Agreement shall in no manner affect their right at a latter time to enforce the same.  No waiver by any Party of any breach of any term contained in this Agreement in any one or more instances shall be deemed to be construed as a further or continuing waiver of such breach, or a waiver of any breach of any other term. No representation, promise, inducement or statement of intention has been made by the Seller or the Buyer which is not embodied in this Agreement or in the documents referred to herein, and neither the Seller nor the Buyer shall be bound by or liable for any alleged representation, promise, inducement or statement of intention no so set forth.

11.    Business Days; Time for Performance:  In the event that the Closing Date falls on a Saturday, Sunday or holiday, then the time for performances due hereunder on or before such date shall be performed, if at all, on the next business day.  Subject to the preceding sentence, time is of the essence of this Agreement and failure to comply with any provision herein shall be a material breach of this Agreement.

12.    Appropriate Notice in the Debtors' Bankruptcy Case: The Trustee shall

15
# EXHIBIT "1"

cause appropriate notice of this Agreement to be given to Parties entitled to such notice under the United States Bankruptcy Code and Rules and pursuant to Bankruptcy Court Order.

13.   Governing Law.   This Agreement is to be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and where state law is implicated, the laws of the State of California shall govern.

14.   Counterparts:   This Agreement may be executed in any number of original, fax or copied counterparts, and all counterparts shall be considered together as one agreement. A faxed or copied counterpart shall have the same force and effect as an original signed counterpart. Each of the Parties hereby expressly forever waives any and all rights to raise the use of a fax machine to deliver a signature, or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a fax machine, as a defense to the formation of a contract.

15.   Headings:   Headings in this Agreement are for convenience or reference only and shall not limit or otherwise affect the meaning hereof.

*[The remainder of this page is intentionally left blank; signature page follows.]*

I, THE BUYER HEREIN, HAVE REVIEWED THE FOREGOING AGREEMENT AND UNDERSTAND THE TERMS AND CONDITIONS SET FORTH HEREIN, AND FURTHER AGREE TO PURCHASE THE PROPERTY PURSUANT TO SAID TERMS AND CONDITIONS.

Dated: July __, 2010          The Duggan Group

                              By: _____
                                  PATRICK E. DUGGAN

16

# EXHIBIT "1"

I, THE SELLER, AGREE TO SELL THE SUBJECT PROPERTY PURSUANT
TO THE TERMS AND CONDITIONS SET FORTH HEREIN.

Dated: July _6_, 2010

_____

John M. Wolfe, solely and exclusively as the
Chapter 7 Trustee for the bankruptcy estate of
In re Bevier


SIGNATURES CONTINUE ON NEXT PAGE


APPROVED AS TO FORM:


LAW OFFICES OF JAMES M. SULLIVAN, INC.


_____

James Sullivan
Attorneys for The Duggan Group


17

# EXHIBIT "1"

**SHULMAN HODGES & BASTIAN LLP**

Melissa R. Davis
Attorneys for John M. Wolfe, solely and exclusively
as the Chapter 7 Trustee for the bankruptcy estate of
<u>In re Bevier</u>

# EXHIBIT "1"

## **EXHIBIT A**

**Legal Description of Real Property**

[See attached]

# EXHIBIT "1"

## LEGAL DESCRIPTION

Real property in the unincorporated area of the County of Santa Cruz, State of California, described as follows:

PARCEL ONE:

ALL OF LOTS 16 AND 17, IN BLOCK 53, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF SUBDIVISION NO. 5, APTOS BEACH COUNTRY CLUB PROPERTIES, APTOS, SANTA CRUZ COUNTY, CALIFORNIA", FILED FOR RECORD JUNE 7, 1926 IN VOLUME 23 OF MAPS AT PAGE 25, SANTA CRUZ COUNTY RECORDS.

EXCEPTING THEREFROM ALL MINERAL RIGHTS AS RESERVED IN THE DEED FROM SANTA CRUZ LAND TITLE COMPANY, A CORPORATION TO SANTA CRUZ COUNTY TITLE COMPANY, A CORPORATION, RECORDED FEBRUARY 9, 1953 IN BOOK 902, PAGE 130, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

PARCEL TWO:

BEING LOTS 18 AND 19, IN BLOCK 53, AS THE SAME ARE SHOWN AND DESIGNATED ON THAT CERTAIN MAP ENTITLED, "SUBDIVISION NO. 5 APTOS BEACH COUNTRY CLUB PROPERTIES, APTOS, SANTA CRUZ COUNTY, CALIFORNIA", FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER ON JUNE 7, 1926 IN MAP BOOK 23, PAGE 25, SANTA CRUZ COUNTY RECORDS.

EXCEPTING THEREFROM ALL MINERAL RIGHTS AS RESERVED IN THE DEED FROM SANTA CRUZ LAND TITLE COMPANY, A CORPORATION TO SANTA CRUZ COUNTY TITLE COMPANY, A CORPORATION, RECORDED FEBRUARY 9, 1953 IN BOOK 902, PAGE 130, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

APN: 042-151-18 (Affects: Lot 18 of Parcel Two), 042-151-19 (Affects: Lot 19 of Parcel Two) and 042-151-27 (Affects: Parcel One)

# EXHIBIT "1"

## **EXHIBIT B**

**Form of Grant Deed**

20

# EXHIBIT "1"

| In re:<br>**ALAN G. BEVIER** and **CATHERYN BEVIER,**<br><div style="text-align:right">Debtor(s).</div> | CHAPTER **7**<br><br>CASE NUMBER **8:09-bk-18292-ES** |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate a NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **26632 Towne Centre Drive, Suite 300, Foothill Ranch, California 92610.**

A true and correct copy of the foregoing document described as **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:  (1) APPROVING THE SALE OF DEBTORS' TENANCY IN COMMON INTEREST IN REAL PROPERTY SUBJECT TO ALL EXISTING LIENS ON THE PROPERTY AND SUBJECT TO OVERBIDS; (2)APPROVING OVERBID PROCEDURES; AND (3) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF JOHN M. WOLFE IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 26, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Anerio V Altman     lakeforestpacer@gmail.com
- Melissa Davis     mdavis@shbllp.com
- Leonard M Shulman     lshulman@shbllp.com
- Ramesh Singh     claims@recoverycorp.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- John M Wolfe     john.wolfe1@earthlink.net, CA83@ecfcbis.com

      ❑  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served) - On **August 2, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge **will be** completed no later than 24 hours after the document is filed.*

**JUDGE'S COPY (VIA U.S. MAIL)**
UNITED STATES BANKRUPTCY COURT
ATTN:  HONORABLE ERITHE A. SMITH
400 W. FOURTH STREET, SUITE 5041
SANTA ANA, CA  92701-4593

      ■  Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. P. 5 and/or controlling LBR, on _____**,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge **will be** completed no later than 24 hours after the document is filed*.

      ❑  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| **August 2, 2010** | **Erlanna L. Lohayza** | *(signature)* |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                           **F 9013-3.1**

| In re:<br>**ALAN G. BEVIER** and **CATHERYN BEVIER,**<br><div align="right">Debtor(s).</div> | CHAPTER **7**<br><br>CASE NUMBER **8:09-bk-18292-ES** |
|---|---|

## U.S. MAIL SERVICE LIST

**DEBTORS**
ALAN G BEVIER AND
CATHERYN BEVIER
32302 ALIPAZ STREET, #15
SAN JUAN CAPISTRANO, CA
92675

**CREDITOR LISTING**
AMERICAN EXPRESS
BOX 0001
LOS ANGELES, CA 90096-0001

**CREDITOR LISTING**
AMERICAN EXPRESS CENTURION
BANK
POB 3001
MALVERN, PA 19355-0701

**CREDITOR LISTING**
BBG LOAN OPERATIONS
3033 ELDER STREET
BOISE, ID 83705

**CREDITOR LISTING**
BANK OF AMERICA
P.O. BOX 15026
WILMINGTON, DE 19850

**CREDITOR LISTING**
BANK OF AMERICA
P.O. BOX 15027
WILMINGTON, DE 19850

**CREDITOR LISTING**
BANK OF AMERICA
P.O. BOX 15710
WILMINGTON, DE 19886-5726

**CREDITOR LISTING**
CAPITAL ONE
BANKRUPTCY NOTICE
P.O.BOX 5155
NORCROSS, GA 30091

**CREDITOR LISTING**
CAPITAL ONE
P.O. BOX 30273
SALT LAKE CITY, UT 84130

**CREDITOR LISTING**
CHASE
P.O. BOX 15298
WILMINGTON, DE 19850

**CREDITOR LISTING**
CHASE
P.O. BOX 15298
WILMINGTON, DE 19850-5298

**CREDITOR LISTING**
CHASE BANK USA, N.A.
PO BOX 15145
WILMINGTON, DE 19850-5145

**CREDITOR LISTING**
CHEXSYSTEMS
ATTN: CUSTOMER RELATIONS
7805 HURDSON ROAD SUITE
100
WOODBURY, MN 55125

**CREDITOR LISTING**
CUMMINS AND WHITE, LLP
2424 SE BRISTOL, SUITE 300
NEWPORT BEACH, CA 92660

**CREDITOR LISTING**
ED AND LESLIE BEVIER
12 MIRA LAS OLAS
SAN CLEMENTE, CA 92673

**CREDITOR LISTING**
EQUIFAX
P.O. BOX 740241
ATLANTA, GA 30374-0241

**CREDITOR LISTING**
EXPERIAN
P.O. BOX 2104
ALLEN, TX 75013-2104

**CREDITOR LISTING**
FIA CARD SERVICES, NA/BANK OF
AMERICA BY AMERICAN
INFOSOURCE LP AS ITS AGENT
PO BOX 248809
OKLAHOMA CITY, OK 73124-8809

**CREDITOR LISTING**
JOSEPH SAWYER
P.O. BOX 148
APTOS, CA 95001

**CREDITOR LISTING**
LIGHTHOUSE BANK
111 MISSION STREET
SANTA CRUZ, CA 95060

**CREDITOR LISTING**
MARJACK, LLC
LANTERN BAY VILLAGE C/O
ALDEN MANAG
150 PAULARINO AVE. SUITE 194
COSTA MESA, CA 92626

**CREDITOR LISTING**
PATRICK DUGGAN
P.O. BOX 146
APTOS, CA 95001

**CREDITOR LISTING**
RECOVERY MANAGEMENT
SYSTEMS CORPORATION
FOR CAPITAL RECOVERY III LLC
AS ASSIGNEE OF CAPITAL ONE
INSTALLMENT
25 SE 2ND AVENUE SUITE 1120
MIAMI FL 33131

**CREDITOR LISTING**
RICHARD L. BALOCCHI
P.O. BOX 148
APTOS, CA 95001

In re:
**ALAN G. BEVIER** and **CATHERYN BEVIER,**

Debtor(s).

CHAPTER **7**

CASE NUMBER **8:09-bk-18292-ES**

**CREDITOR LISTING**
T-MOBILE
P.O. BOX 53410
LOS ANGELES, CA 90051-6143

**CREDITOR LISTING**
TRANSUNION
P.O. BOX 2000
CHESTER, PA 19022-2000

**CREDITOR LISTING**
WELLS FARGO
BANKRUPTCY DEPT
13675 TECHNOLOGY DR BLDG C
2ND FLR
EDEN PRAIRIE, MN 55344

**CREDITOR LISTING**
WELLS FARGO
P.O. BOX 54349
LOS ANGELES, CA 90054

**ATTORNEY FOR BUYER**
JAMES SULLIVAN, ESQ.
LAW OFFICES OF JAMES M.
SULLIVAN, INC.
225 NORTH SANTA CRUZ AVENUE
LOS GATOS, CA  95030-7275

**RETURNED MAIL**

**6/14/10 - BOX CLOSED; RETURN
TO SENDER**
**CREDITOR LISTING**
VIA TEXTRON, INC.
P.O. BOX 81004
WOBURN, MA 01813

**6/18/10 - NO SUCH STREET;
UNABLE TO FORWARD**
**CREDITOR LISTING**
RALPH HAUN
21162 CASTLEROCK ROAD
SAN CLEMENTE, CA 92673